# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| KAREN DEVOE,<br><br>    Plaintiff,<br><br>VS.<br><br>DEPUY ORTHOPAEDICS, INC.; DEPUY PRODUCTS, INC.; DEPUY SYNTHES, INC.; JOHNSON & JOHNSON; JOHNSON & JOHNSON SERVICES, INC.; and JOHNSON & JOHNSON INTERNATIONAL,<br><br>    Defendants. | Case No.: 4:20-cv-13231<br><br><br><br>**COMPLAINT**<br>**AND JURY TRIAL DEMAND** |

Plaintiff, Karen DeVoe, by and through her undersigned counsel, for her Complaint against DePuy Orthopaedics, Inc., DePuy Products, Inc., DePuy Synthes, Inc., Johnson & Johnson, Johnson & Johnson Services, Inc., and Johnson & Johnson International ("Defendants"), alleges on personal knowledge as to herself and on information and belief as to all other matters as follows:

## PARTIES

1. Plaintiff is a citizen of the State of Michigan and resides in Flint, Michigan, in Genesee County in the Eastern District of Michigan. On or about December 11, 2017, Ms. DeVoe underwent a right side reverse total shoulder replacement utilizing the DePuy Synthes Delta Xtend Reverse Shoulder System.

1

2. Defendant DePuy Orthopaedics, Inc. is a corporation organized and existing under the laws of the State of Indiana with its principal place of business located at 700 Orthopaedics Drive, Warsaw, IN 46581. At all times relevant to this action, defendant DePuy Orthopaedics has conducted business in the Eastern District of Michigan.

3. Defendant DePuy Products, Inc. is a corporation organized and existing under the laws of the State of Indiana, with its principal place of business located at 700 Orthopaedics Drive, Warsaw, IN 46581. At all times relevant to this action, defendant DePuy Products, Inc. has conducted business in the Eastern District of Michigan.

4. Defendant DePuy Synthes, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 700 Orthopaedics Drive, Warsaw, IN 46581. At all times relevant to this action, defendant DePuy Synthes, Inc. has conducted business in the Eastern District of Michigan.

5. Defendant Johnson & Johnson is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business located at One Johnson & Johnson Plaza, New Brunswick, NJ 08933. Defendant Johnson & Johnson is the parent company of Defendants DePuy Synthes, Inc., Johnson & Johnson Services, Inc., and Johnson & Johnson International. At all times relevant to this action, Defendant Johnson & Johnson, Inc. has conducted business in the Eastern District of Michigan.

6. Defendant Johnson & Johnson Services, Inc. is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business located at One Johnson & Johnson Plaza, New Brunswick, NJ 08933. Defendant Johnson & Johnson Services, Inc. is a subsidiary of Defendant Johnson & Johnson. At all times relevant to this action, Defendant Johnson & Johnson Services, Inc. has conducted business in the Eastern District of Michigan.

7. Johnson & Johnson International is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at One Johnson & Johnson Plaza, New Brunswick, NJ 08933. Defendant Johnson & Johnson International is a subsidiary of Defendant Johnson & Johnson. At all times relevant to this action, Defendant Johnson & Johnson International has conducted business in the Eastern District of Michigan.

8. With respect to the allegations in this Complaint and the conduct leading to Plaintiff's injuries, the Defendants acted in concert with one another, pursuant to a common design, provided substantial assistance and/or encouragement to the tortious conduct of the others, and participated in their tortious conduct.

## JURISDICTION AND VENUE

9. This Court has diversity jurisdiction over the parties pursuant to 28 U.S.C. §1332(a). At least one defendant is a citizen of a different state as the Plaintiff and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

10. Venue is proper in this Court under 28 U.S.C. § 1391(b) (2)

## FACTUAL ALLEGATIONS

9. In this action, Plaintiff seeks compensation for injuries resulting from the mechanical failure of the DePuy Synthes Delta Xtend Reverse Shoulder System.

10. On or about December 11, 2017, Plaintiff, Karen DeVoe, underwent a right shoulder reverse total shoulder replacement utilizing the DePuy Synthes Delta Xtend Reverse Shoulder System.

11. The DePuy Synthes Delta Xtend Reverse Shoulder System consists of components that change the orientation of the shoulder so that the shoulder socket is replaced with an artificial

ball and the normal ball is replaced with an implant that combines a humeral cup and stem into which the artificial ball rests.

12.     As part of the Delta Xtend Reverse Shoulder System implant surgery, the metaglene component base plate is secured to the face of the glenoid with 4 DePuy Synthes Delta X Screws.

13.     The Plaintiff did well for approximately three months following her surgery.

14.     Sometime during the first two weeks of March 2018, Ms. DeVoe suddenly developed right shoulder pain.

15.     Radiographs obtained on March 15, 2018 revealed that the lower glenoid fixation Delta X Screw had fractured, causing migration of the metaglene component.

16.     That Plaintiff did not sustain trauma to her right shoulder or otherwise use her right shoulder in a manner likely to damage the implant components.

17.     As a result of the broken screw, she was recommended for surgical removal of the glenoid component and the placement of a right shoulder hemiarthroplasty.

18.     On May 22, 2018, the Plaintiff underwent a revision surgery of her right shoulder replacement.

## FIRST CLAIM FOR RELIEF - NEGLIGENCE

53.     Plaintiff, Karen DeVoe, adopts by reference and incorporates herein the allegations set forth above.

54.     Defendants had a duty to exercise reasonable care in the manufacture, testing, quality assurance, quality control and distribution of the DePuy Synthes Delta Xtend Reverse Shoulder System into the stream of commerce, including a duty to assure that the device, and all of its component parts, including the Delta X Screws, would not fail and/or fracture.

55. Defendants failed to exercise reasonable care in the manufacture, testing, quality assurance, quality control and distribution of the DePuy Synthes Delta Xtend Reverse Shoulder System into interstate commerce.

56. The negligence of Defendants, their agents, servants and employees, included but was not limited to the following acts and/or omissions:

   a. Designing, manufacturing, producing, creating and promoting the DePuy Synthes Delta Xtend Reverse Shoulder System without adequately, sufficiently or thoroughly testing it;

   b. Not conducting a sufficient testing program to determine whether or not the DePuy Synthes Delta Xtend Reverse Shoulder System was safe for use;

   c. Manufacturing, selling, assembling and delivering the Delta Xtend Reverse Shoulder System in an defective manner as set forth above;

   d. Possessing vast and resourceful knowledge in the field of manufacturing joint reconstruction components, yet failing to utilize that knowledge and experience by manufacturing Synthes Delta Xtend Reverse Shoulder System with defective Delta X Screws;

   e. Failing to properly and carefully inspect, test and examine the Synthes Delta Xtend Reverse Shoulder System, and in particular Delta X Screws in order to ascertain and discover defects;

   f. Failing to source, select, test and utilize parts and/or materials in the assembly of the Synthes Delta Xtend Reverse Shoulder System which were suitable for use and resistant to the forces and types of mechanical wear likely to be generated by ordinary use of the device once implanted in the human body;

    g. Negligently representing that the Synthes Delta Xtend Reverse Shoulder System was safe for use for its intended purpose, when, in fact, it was unsafe;

    h. Negligently manufacturing the DePuy Synthes Delta Xtend Reverse Shoulder System in a manner that was dangerous to those individuals who had it implanted;

    i. Negligently producing the Synthes Delta Xtend Reverse Shoulder System in a manner that was dangerous to those individuals who had it implanted;

    j. Negligently assembling the Synthes Delta Xtend Reverse Shoulder System in a manner, that was dangerous to those individuals who had it implanted;

57. That the Defendants had actual and/or constructive knowledge of the defect described herein and of the substantial likelihood that said defect would result in a fracture of the Delta X Screws and a failure of the implant components and Defendants willfully disregarded that knowledge.

58. That Defendants are strictly liable to Plaintiff for damages caused by the defects and inadequacies in the manufacture of the Synthes Delta Xtend Reverse Shoulder System and in particular, the Delta X Screw that failed.

59. That the Delta X Screw that fractured was defective as manufactured, and the acts of the Defendant as described herein was a proximate cause of the Plaintiff's injuries.

## SECOND CLAIM FOR RELIEF - BREACH OF WARRANTY

60. Plaintiff, Karen DeVoe, adopts by reference and incorporates herein the allegations set forth above.

61. That at the time of the manufacture and sale of Synthes Delta Xtend Reverse Shoulder System, including the Delta X Screws, Defendant impliedly warranted that all implant components:

   a. Had been manufactured, inspected, sold and delivered in a manner or fashion to render it reasonably safe, fit, and proper for the use intended;

   b. Had been manufactured, inspected, sold, and delivered in a manner and fashioned so as to contain and include proper materials, component parts, construction and workmanship;

   c. Had been manufactured and delivered with the respective parts installed in a manner that was proper;

   d. Had been adequately and properly tested, manufactured, engineered and inspected so as to eliminate the possibility of a fracture of the Delta X Screws and failure of the implant.

62. That Defendant knew the particular purpose for which the Synthes Delta Xtend Reverse Shoulder System was to be used, and that purchasers and users would rely on the Defendant's skill or judgment in testing, selecting component parts, manufacturing and furnishing goods suitable for such purposes and uses.

63. That as a direct and proximate consequence of the breaches of warranty by Defendants, the Synthes Delta Xtend Reverse Shoulder System as implanted in Plaintiff was defective, which caused on of the Delta X Screws to fracture, resulting in the failure of the implant and resulted in injuries to the Plaintiff and the need for revision surgery.

### THIRD CLAIM FOR RELIEF - MICHIGAN VERSION OF RES IPSA LOQUITOR

64. Plaintiff, Karen DeVoe, adopts by reference and incorporates herein the allegations set forth above.

65. That the Plaintiff was injured in an event which ordinarily does not occur in the absence of someone's negligence.

66. That the event was not due to any voluntary action or contribution on the part of the Plaintiff.

67. That evidence of the true explanation of the event is more readily available to the Defendants than to the Plaintiff.

68. That Plaintiff pleads the Michigan version of res ipsa loquitor or circumstantial evidence to establish the negligence and/or breach of warranties which resulted in injury to the Plaintiff.

### DAMAGES

69. Plaintiff adopts by reference and incorporates herein the allegations set forth above.

70. As described herein, Plaintiff, Karen DeVoe, has sustained damages and losses as a result of the wrongful and tortious conduct of Defendants, for which Defendants are jointly and severally liable. Plaintiff hereby requests the Court and Jury to determine the amount of loss she has incurred in the past and will incur in the future, not only from a financial standpoint but also in terms of good health and freedom from pain and worry. There are certain elements of damages, provided by law, that Plaintiff is entitled to have the Jury in this case separately consider to determine the sum of money for each element that will fairly and reasonably compensate Plaintiff for her injuries, disabilities, damages, and losses incurred and, in reasonable

probability, to be incurred in the future. From the date of the incident until the time of trial, those elements of past damages to be considered separately and individually are as follows:

    a. The physical pain that Plaintiff has suffered from the date of her injury until the time of trial;

    b. The mental anguish that Plaintiff has suffered from the date of her injury until the time of trial;

    c. The amount of reasonable medical expenses, necessarily incurred in the care and treatment of Plaintiff's injuries from the date of her injury until the time of trial;

    d. The physical incapacities, disabilities and impairments suffered by Plaintiff, and the resulting inability to do those tasks and services that she would have ordinarily been able to perform, from the date of her injury until the time of trial; and

    e. The disfigurement of Plaintiff from the date of her injury until the time of trial.

71. From the time of the trial of this case, those elements of future damages to be separately considered which Plaintiff, Karen DeVoe, will, in reasonable probability, sustain in the future beyond trial are the following:

    a. The physical pain that Plaintiff will suffer beyond the time of trial;

    b. The mental anguish that Plaintiff will suffer beyond the time of trial;

    c. The reasonable value of medical expenses that will necessarily be incurred in the care and treatment of Plaintiff's injuries beyond the time of trial;

    d. The physical incapacities, disabilities and impairments suffered by Plaintiff, and the resulting inability to do those tasks and services that she would have ordinarily been able to perform, beyond the time of trial; and

    e. The disfigurement of Plaintiff beyond the time of trial.

72. Plaintiff is also entitled to recover pre-judgment and post-judgment interest as allowed by law, for which Plaintiff hereby brings suit to recover together with court costs and any other relief to which she is entitled.

## PRAYER

For the reasons stated herein, Plaintiff, Karen DeVoe, prays that upon final trial of this case, she be awarded a judgment against Defendants, jointly and severally, for actual damages as specified herein, exemplary damages as specified herein, costs of court, pre-judgment and post judgment interest as allowed by law, attorneys' fees and expenses as allowed by law, and such other and further relief, general and special, at law and in equity, to which she may be justly entitled.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all claims in this action.

Respectfully Submitted,
JAKEWAY INJURY LAW

DATED: December 9, 2020

BY:  /s/ Morgan H. Jakeway____
Morgan H. Jakeway
JAKEWAY INJURY LAW
Attorneys for Plaintiff
8161 S. Saginaw St.
Grand Blanc, MI 48439
(810) 694-1211
(810) 694-2178(Telecopier)
morgan@jakewayinjurylaw.comDE